# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BRIAN M.,[1]<br>　　Plaintiff, | Case No. 2:23-cv-2649<br>Watson, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　Defendant. | REPORT AND<br>RECOMMENDATION |

Plaintiff, Brian M., brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI).[2] This matter is before the Court on plaintiff's statement of errors (Doc. 9), the Commissioner's response (Doc. 11), and plaintiff's reply (Doc. 12).

## I. Procedural Background

Plaintiff protectively filed his application for SSI in October 2019, alleging disability beginning April 18, 1985 due to an anxiety disorder, agoraphobia, and social phobia. (Tr. 16, 227-33, 252). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Kimberly S. Cromer. Plaintiff and a vocational expert (VE) appeared by telephone and testified at the ALJ hearing on July 7, 2022. (Tr. 35-76). On August 29, 2022, the ALJ issued a decision

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.
[2] Plaintiff withdrew a concurrently filed application for Child Disability Benefits under Title II. (Tr. 17, 307).

denying plaintiff's SSI application. (Tr. 13-34). On June 22, 2023, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th

Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since April 18, 1985, the alleged onset date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: Anxiety, Depression, Autistic disorder, PTSD, and morbid obesity (20 CFR . . . 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR . . . 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps or stairs, but should not climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, crouch, kneel, and crawl.  He should not work at unprotected heights or around hazardous machinery.  He should not perform commercial driving.  He should avoid concentrated exposure to vibration.  [Plaintiff] can perform simple routine tasks that involve only occasional decision-making and occasional changes in the work setting.  [Plaintiff] should not have face-to-face interaction with the general public but can have telephone or computer online interaction.  He can occasionally interact with coworkers and supervisors.  He should not perform tandem tasks.  [Plaintiff] cannot perform fast-paced production work such as assembly-line work or work where the machine sets the pace, but rather can perform work that is of a variable rate.  There should be no strict production goals or hourly requirements, only end of the day work goals.
>
> 5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] was born [in] . . . 1974 and was 46 years old, which is defined as a younger individual age 18-44, on the date of the protective filing date of the Title 16 claim (20 CFR 416.963).

7. [Plaintiff] has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[3]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from April 18, 1985, through the date of this decision (20 CFR 416.920(g)).

(Tr. 19-28).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[3] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as document preparer (17,000 jobs in the national economy); sorter (9,000 jobs in the national economy); and assembler (22,000 jobs in the national economy). (Tr. 28, 70).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors

Plaintiff raises a single assignment of error: the ALJ purported to adopt the opinions of the state agency psychological consultants but then failed to explain why she omitted certain of their restrictions from his residual functional capacity (RFC) determination.[4] The Court lays out the relevant administrative background before analyzing the particular restrictions at issue.

#### 1. The state agency consultants' opinions and the ALJ's decision

State agency psychological consultant Ellen Gara, Ph.D.,[5] reviewed plaintiff's file at the initial level. (Tr. 92-105). Regarding the paragraph "B" criteria for the listings, Dr. Gara opined that plaintiff was mildly limited in his ability to understand, remember, or apply information and moderately limited in his ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (Tr. 97). Dr. Gara opined that plaintiff was limited in his ability to concentrate and focus due to anxiety but could still carry out 1-4-step tasks independently. (Tr.

---

[4] Plaintiff's specific error pertains only to the ALJ's mental RFC determination. Any argument related to the ALJ's physical RFC determination is deemed waived. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it legally or factually in the Statement of Errors") (report and recommendation), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).
[5] The Disability Determination Explanations do not list a professional degree, but the Certified Administrative Record's exhibit descriptions of these documents reference a "Ph.D." (*See* Doc. 6-3, Exs. 1A and 3A).

101-02). Dr. Gara opined that plaintiff could relate on a superficial basis with coworkers and supervisors but should have minimal interactions with the general public. (Tr. 102). Dr. Gara further opined that plaintiff was able to work in relatively static environments where job demands are routine and predictable in nature. (*Id.*).

State agency psychological consultant Janet Souder, Psy.D., affirmed Dr. Gara's assessment on reconsideration as to the paragraph "B" criteria. (Tr. 110). As to plaintiff's ability to sustain concentration and persistence, Dr. Souder agreed that plaintiff could carry out 1-4 step tasks independently but qualified that this would be only in settings "where there is occasional flexibility of schedule, within a normal workday/workweek, to permit him to regain focus and manage symptoms." (Tr. 114). As to plaintiff's ability to socially interact, Dr. Souder agreed that plaintiff's relations with coworkers and supervisors should be "superficial" but qualified that his relations should also be limited to a "small group of coworkers and supervisors in a nonpublic setting." (Tr. 115).

At the ALJ hearing, plaintiff's counsel questioned the VE about concentration or persistence limitations:

> Q . . . So the types of jobs that you've enumerated, these are all SVP 2, you know, unskilled jobs. It's my understanding that in these kind of jobs, break schedules are dictated by the employer. In other words, the employer says okay, you get a 15-minute break at 10:00 a.m., 30 minutes at noon, and at 2:00, you can take another 15 minutes. Would you agree with that?
>
> A  I do agree with that.
>
> Q  And so if a person needed to pick and choose when they wanted to take their breaks throughout the workday, would that be problematic?
>
> A  Yes, it would be.
>
> Q  Similarly, I assume that if someone needed to alter their work schedule, you know, today, I woke up this morning, I'm not feeling too good for whatever reason,

> and I'd like to start an hour late, but I'll stay an hour longer at the end of the day. Is that a problem?
>
> A  It is, ma'am.
>
> Q  And then with regard to the 10% maximum off-task behaviors, does that have to be fairly well spread out throughout the workday? In other words, somebody couldn't just take an extra 30-minute break and walk away from their workstation?
>
> A  That's correct.

(Tr. 73-74).

The ALJ found the opinions of Drs. Gara and Souder "persuasive" and "accepted" them "as accurate representations of [plaintiff's] mental status." (Tr. 27). The ALJ reasoned that they were "based on objective signs and findings, consistent with the credible portion of activities of daily living evidence, and not contradicted by any treating source shown to be familiar with SSA and occupation standards" and therefore "consistent with and well supported by the evidence of the record as a whole. . . ." (*Id.*). The ALJ reached the following mental RFC determination:

> [Plaintiff] can perform simple routine tasks that involve only occasional decision-making and occasional changes in the work setting. [Plaintiff] should not have face-to-face interaction with the general public but can have telephone or computer online interaction. He can occasionally interact with coworkers and supervisors. He should not perform tandem tasks. [Plaintiff] cannot perform fast-paced production work such as assembly-line work or work where the machine sets the pace, but rather can perform work that is of a variable rate. There should be no strict production goals or hourly requirements, only end of the day work goals.

(Tr. 22).

### 2. Analysis

Plaintiff's assignment of error concerns how or whether the ALJ incorporated the state agency psychological consultants' opinions that she found persuasive into her RFC determination. A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant

7

evidence in her case file.  (*Id.*).  The governing regulations[6] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. § 416.913(a)(1)-(5).  With two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources."  20 C.F.R. § 416.920c(a).

The ALJ is charged with the final responsibility of determining a claimant's RFC.  *See* 20 C.F.R. § 416.946(c).  The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence.  20 C.F.R. § 416.945(a)(3).  *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record."); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

The ALJ is "not required to recite the medical opinion of a physician verbatim in h[er] residual functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  This is so even where an opinion is assigned significant weight.  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim" or "limitations wholesale.").  At the same time, "[i]f the RFC assessment conflicts with

---

[6] Plaintiff's applications were filed after March 27, 2017.  Therefore, they are governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 416.913(a), 416.920c.

an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p,[7] 1996 WL 374184, at *7 (July 2, 1996).

### a. *Social interaction limitations*

For ease of reference, the state agency psychological consultants' opinions and the ALJ's determination on this mental functioning area were the following:

| Dr. Gara | Dr. Souder | ALJ |
|---|---|---|
| Plaintiff "can relate on a superficial basis with coworkers and supervisors. [She] should have minimal interactions with the general public." (Tr. 102). | Plaintiff "can relate on a superficial basis with a small group of coworkers and supervisors in a nonpublic setting." (Tr. 115). | "The claimant should not have face-to-face interaction with the general public but can have telephone or computer online interaction. He can occasionally interact with coworkers and supervisors. He should not perform tandem tasks." (Tr. 22). |

Plaintiff argues that the ALJ omitted from her RFC determination the state agency psychological consultants' word "superficial" and Dr. Souder's qualification that plaintiff could only work with a "small group of coworkers and supervisors in a nonpublic setting." (Tr. 102, 115). The Commissioner argues in response that the ALJ was not required to adopt each element of the state agency psychological consultants' opinions—even if he found them persuasive overall. The Commissioner also argues that the ALJ incorporated these limitations using vocationally relevant terms.

First, the ALJ did not err by omitting the word "superficial." Several courts within the Sixth Circuit have found that a restriction against "tandem tasks" or similar terms is a

---

[7] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

vocationally relevant equivalent for the qualitative connotation of the term "superficial." *See Kelsey v. Comm'r of Soc. Sec.*, No. 1:22-cv-280, 2022 WL 18358921, at *6 (W.D. Mich. Dec. 29, 2022) (restricting the plaintiff "to no interaction with the public, occasional interaction with supervisors and coworkers, and no tandem or cooperative tasks" represented "significant limitations . . . on the quality of the interaction, essentially amounting to no more than superficial contact with supervisors and coworkers") (report and recommendation), *adopted*, 2023 WL 246884 (W.D. Mich. Jan. 18, 2023); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467, 2021 WL 5577405, at *14 (S.D. Ohio Nov. 30, 2021) ("Given [the ALJ's thorough review of medical records reflecting generally normal mental health findings] and the fact that the ALJ included limitations on the nature/quality (as opposed to only the frequency) of interactions, the Court finds that the ALJ's mental RFC determination took the state agency psychologists' opinions regarding 'superficial' interactions into account and was based on substantial evidence.") (report and recommendation), *adopted sub nom. Stamper v. Kijakazi*, 2022 WL 1183234 (S.D. Ohio Apr. 21, 2022); *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *12 (S.D. Ohio July 28, 2020) ("The Court agrees that the limitation to no tandem tasks is a qualitative limitation on social interaction. As such, this limitation adequately addressed the opinion of [the state agency consultants] that Plaintiff be limited to superficial interaction with others.") (report and recommendation), *adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020); *Kearns v. Comm'r of Soc. Sec.*, No. 3:19-cv-1243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020) ("[T]he ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction and adequately addressed the opinion of [the state agency consultants] that Kearns be limited to superficial interaction with others.") (report and recommendation), *adopted*, 2020 WL 2839654 (N.D. Ohio June 1, 2020); *Collins v. Comm'r of Soc. Sec.*, No. 3:17-cv-2059, 2018 WL

10

7079486, at *6 (N.D. Ohio Dec. 7, 2018) ("[T]he ALJ restricted Plaintiff from "team or tandem tasks" (Tr. 15), which logically require more than superficial interpersonal contact.  This is a restriction on the quality of interpersonal contact.") (report and recommendation), *adopted*, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019).  Based on the foregoing, the ALJ properly converted the word "superficial" into vocationally relevant terms for incorporation into her RFC determination.

Second, the ALJ did not fail to incorporate Dr. Souder's limitation to interactions with only a "small group of coworkers and supervisors in a nonpublic setting."  The ALJ used the adjective "tandem," which is defined, as relevant here, as "working . . . in conjunction with each other."  *Tandem*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/tandem (last visited April 22, 2024) [https://perma.cc/M3NG-3J6T].  Based on this definition, the ALJ's restriction against tandem tasks is—if anything—*more* restrictive than Dr. Souder's limitation to interaction with no more than a "small group of coworkers and supervisors."  They are not inconsistent.

As to Dr. Souder's limitation that any social interaction be in "nonpublic settings," the Court finds that this qualification is encompassed by the ALJ's restriction against face-to-face interaction with the general public.  Black's Law Dictionary defines "public," as relevant here, as "[a] place open or visible to the public."  *Public*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Assuming, under the ALJ's RFC determination, that plaintiff is restricted from all face-to-face interactions with the general public, the Court finds it difficult to imagine a scenario where plaintiff would nevertheless find himself in a place "open or visible to the public."  *Id.*

For the foregoing reasons, the Court finds no conflict between the ALJ's RFC determination and the state agency psychological consultants' opinions on plaintiff's social

11

interaction limitations. This element of the ALJ's RFC determination is based on substantial evidence.

### b. Concentration or persistence limitations

The state agency psychological consultants' opinions and the ALJ's determination on this mental functioning area were the following:

| Dr. Gara | Dr. Souder | ALJ |
|---|---|---|
| Plaintiff "retains the capability of concentrating to be able to carry out 1-4 step directives independently." (Tr. 101-02). | Plaintiff "retains the capability of concentrating to be able to carry out 1-4 step directives independently in a setting where there is occasional flexibility of schedule, within a normal workday/workweek, to permit him to regain focus and manage symptoms." (Tr. 114). | "The claimant cannot perform fast-paced production work such as assembly-line work or work where the machine sets the pace, but rather can perform work that is of a variable rate. There should be no strict production goals or hourly requirements, only end of the day work goals." (Tr. 22). |

Plaintiff argues that the ALJ's RFC determination omits Dr. Souder's opinion that plaintiff required "occasional flexibility of schedule to permit him to regain focus and manage symptoms. . . ." (Doc. 9 at PAGEID 1069, referring to Tr. 114). Plaintiff argues that this error requires remand because the VE's testimony demonstrates that such a limitation is work preclusive.

In addition to the arguments noted above, the Commissioner also argues that Dr. Souder's opinion is not work preclusive. The Commissioner notes that plaintiff's counsel questioned the VE on this mental functioning area in terms of "breaks"—a specific vocational term referring to formal breaks occurring at specific intervals and, in some cases, away from the work station. *See, e.g.*, SSR 96-9p, 1996 WL 374185, at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour

12

intervals."). The Commissioner argues that the term "break" contemplates something beyond what Dr. Souder meant by the phrase "occasional flexibility."

In reply, plaintiff notes that "occasional" is a specific vocational term referring to a frequency of up to one-third of the workday or two hours of an eight-hour workday—a concept with which Dr. Souder, a state agency consultant, would have been familiar. *See id.* at *3 ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."). Plaintiff reasons that Dr. Souder's concentration or persistence limitation was work preclusive based on the VE's testimony about the jobs she listed (the employee could not pick and choose break times, the employee could be off task only up to 10% of the day, the employee's off-task time would have to be spread throughout the workday). Plaintiff therefore argues that the ALJ rejected this work-preclusive element of Dr. Souder's opinion without explanation.

The Court finds there is an inconsistency between the state agency psychological consultants' concentration or persistence limitation and the ALJ's RFC determination. The ALJ included limitations tailored to plaintiff's concentration or persistence abilities (variable-rate work, no strict production quotas or hourly goals (*see* Tr. 22)). These limitations, however, do not address the precise issue identified by Dr. Souder: that plaintiff's moderately limited abilities in this mental functioning area depended on "occasional flexibility of schedule . . . to permit him to regain focus and manage symptoms." (Tr. 114). When plaintiff's attorney posited to the VE that plaintiff might need (1) to be off task more than 10% of the workday, (2) extended break times, or (3) to start or end his workday at flexible times—all of which are reasonably contemplated under Dr. Souder's limitation—the VE testified that it would present problems for the jobs that she identified.

13

The ALJ not only found Dr. Souder's opinion on plaintiff's concentration or persistence limitations persuasive, she also "accepted" them "as accurate representations of the claimant's mental status." (Tr. 27). Given these findings by the ALJ and the absence of any other language in the ALJ's decision purporting to explain the omission of this limitation, the Court finds that the ALJ's decision fails to provide a "'logical bridge' between the evidence in the record and [her] conclusion." *Mukes v. Comm'r of Soc. Sec.*, 946 F. Supp. 2d 737, 747 (S.D. Ohio 2013) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). *See also Moore v. Colvin*, No. 2:14-cv-455, 2015 WL 5675805, at *7 (S.D. Ohio Sept. 28, 2015) ("[T]his Court is left with an inability to discern whether the ALJ discounted portions of the[ ] . . . opinions for valid or invalid reasons, or simply ignored them altogether. *See* [*Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)]. Such omissions constitute procedural error. . . ."). This element of the ALJ's RFC determination is therefore not based on substantial evidence. *See id.* ("[T]he ALJ's MRFC determination is not supported by substantial evidence when he grants significant weight to a medical opinion concerning the claimant's limitations, but then fails, without explanation, to incorporate those limitations into the claimant's MRFC.").

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's statement of errors (Doc. 9) be **OVERRULED in part** and **SUSTAINED in part** as explained herein;

2. The Commissioner's non-disability finding be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this decision.

Date: 5/8/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRIAN M., <br>  Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF <br> SOCIAL SECURITY, <br>  Defendant. | Case No. 2:23-cv-2649 <br> Watson, J. <br> Litkovitz, M.J. |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).